UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

MADISON INTERNATIONAL
LIQUIDITY FUND, LLC,

    Plaintiff,

    v.                                                Case No. C-1-08-305

AL. NEYER, INC., et al.,

    Defendants.

## ORDER

This matter is before the Court upon a Motion for Partial Summary Judgment filed by plaintiff Madison International Liquidity Fund, LLC (Madison) on the specific issue of defendant Al. Neyer, Inc.'s liability for alleged breach of its contract with Madison (doc. 19). Defendant Al. Neyer, Inc. (Al. Neyer) opposes the motion (doc. 22).

### I. Allegations of the Complaint

Plaintiff Madison brings this action against defendants Al. Neyer and Neyer 655 Plum St. LLC ((Neyer 655 Plum). The defendants are referred to in this Order collectively as "Neyer." Plaintiff makes the following allegations in the complaint: Madison is a Delaware limited liability company with its principal place of business in New York. Madison is a wholly-owned subsidiary of Madison International Realty, a specialty real estate investment firm in the business of providing liquidity to investors in existing real estate transactions. Defendant Al. Neyer is a real estate investment company and an Ohio corporation with its headquarters and principal place of business in Cincinnati. Upon information and belief, defendant Neyer 655 Plum is an

1

Ohio limited liability company and a wholly-owned subsidiary of Al. Neyer with a principal place of business in Cincinnati.

In July 2000, Neyer and Real Estate Equity Trust No. 1, Fifth Third Bank, Trustee (REET I), entered into an Operating Agreement (Agreement) for the purpose of forming a limited liability company called Neyer/REET I, LLC (the Company). The primary purpose of the Agreement and of the Company was the development of a 67,500 square foot office building located on Plum Street in downtown Cincinnati, which is known as the "Delta Call Center." Section 13.1 of the Agreement gives REET I what is known as a "put option right." Section 13.1 provides, in pertinent part, as follows:

> **REET I Option to Sell -** After the third anniversary of the Effective Date, REET I shall have the option to give written notice to ANI [Al. Neyer] that it will require ANI to purchase, and ANI shall have the obligation to purchase on such date not sooner than one (1) year after the date of such notice, REET I's Units for a price equal to the Purchase Price . . . .

In February 2005, Madison acquired REET I's 62.5% ownership interest in the Company by way of a Purchase Agreement with REET I. Pursuant to that Purchase Agreement, Madison acquired all of REET I's rights and obligations under the Agreement, including REET I's put option right under § 13.1. Neyer expressly consented to Madison's acquisition of REET I's interest in the Company, including the acquisition of REET I's put option right. Neyer also confirmed on several other occasions Madison's rights under § 13.1.

Upon information and belief, Al. Neyer has transferred its membership interest in the Company to Neyer 655 Plum. The Agreement required that Madison consent to the transfer of Al. Neyer's ownership interest, and consent was expressly made subject to Al Neyer's "acknowledge[ment] and agree[ment] that Madison shall continue to be entitled to exercise its

rights under Section 13.1 of the Operating Agreement as against [Al. Neyer]." For purposes of the complaint and the claim made under § 13.1 of the Agreement, Al. Neyer remains bound by the Agreement.

In November 2006, Madison gave Neyer written notice exercising its put option right under § 13.1 of the Agreement. Pursuant to the terms of § 13.1, Neyer had 12 months after receipt of that notice to acquire Madison's 62.5% interest for the "Purchase Price" as defined by the Agreement. In October 2007, Neyer asked Madison to extend the 12-month deadline for Neyer to purchase Madison's interest. Madison agreed to extend the put option date to May 1, 2008.[1] Shortly before filing the complaint, Madison reminded Neyer of its obligation under § 13.1 of the Agreement to purchase Madison's interest in the Company by the May 1 deadline and stated that Madison was ready, willing and able to transfer its units in the Company in exchange for the Purchase Price. Neyer did not, however, purchase Madison's units and did not tender the Purchase Price or any amount of money for Madison's units. Instead, Neyer has unequivocally indicated that it does not intend to purchase Madison's units in the Company for the Purchase Price.

According to the formula used and provided by Neyer as recently as December 2007 to calculate the Purchase Price, the amount Neyer owed Madison for its units as of April 30, 2008, was $3,718,200.

Based on the foregoing, Madison claims Neyer has a duty under § 13.1 of the Agreement, upon notice from Madison, to pay Madison the Purchase Price and to take Madison's units in the

---

[1]According to the written amendment to the Agreement extending the put option date, Madison actually agreed to extend the deadline to May 31, 2008. *See* doc. 23-2, exh. 1, Amendment No. 2.

Company in exchange for the Purchase Price. Madison claims that it has performed its obligations to Neyer under the Agreement, including providing timely written notice of its exercise of its put option right under § 13.1 and tendering its units to Neyer in exchange for the Purchase Price. Madison claims that Neyer breached its duty under § 13.1 of the Agreement when it failed to purchase Madison's units within the time frame upon which the parties had agreed. Madison claims that Neyer's alleged breached of the Agreement has caused injury to it and that in the absence of a court order, it will be unable to transfer its units in the Company in exchange for the Purchase Price to which it is entitled under the Agreement, so that Madison has no adequate remedy at law for Neyer's alleged breach. As relief, Madison demands judgment against Neyer for breach of the Agreement; an order for specific performance of the parties' obligations under § 13.1 of the Agreement, specifically, an order that Neyer pay Madison the Purchase Price as calculated on the date of transfer of the units in the Company and that in exchange Madison transfer its units to Neyer; or, in the alternative, judgment against Neyer for money damages; and an award of costs, expenses, and attorney fees.

## II. Request for Oral Argument

The legal and factual issues involved in this case are not complex and they have been fully briefed by the parties. Pursuant to Rule 7.1 of the Local Rules of the United States District Court for the Southern District of Ohio, the Court therefore finds that oral argument would not be helpful and plaintiff's request for same is denied.

## III. Motion for Partial Summary Judgment

Madison claims that it is entitled to summary judgment as to liability only on its breach of contract claim against Al. Neyer because the Agreement expressly requires Al. Neyer to

purchase Madison's interest in their shared company, and Al. Neyer admits that it has neither purchased Madison's interest nor offered to do so, thereby establishing a breach of the Agreement. Al. Neyer asserts that it has not breached the Agreement because the performance of its obligations under § 13.1 is excused pursuant to the terms of § 13.3 of the Agreement, which "conditions" the put option right by providing as follows:

> **Payment of Purchase Price -** The transfer of Units and payment of the Purchase Price shall occur on the date specified in the notice given pursuant to the previous two sections, respectively. If REET I exercises its option pursuant to Section 13.1 above but ANI is unable to purchase REET I's Units as provided above, REET I shall have the right to mandate that the Company sell the Project and in such event the Members will jointly participate in the listing and sale of the Project.

Al. Neyer contends that § 13.3 provides Madison the right to mandate the sale of the units and excuses it from purchasing Madison's interest in the Company in the event it is unable to do so.

Madison counters that § 13.3 is not mandatory but simply gives it a cumulative right to mandate the sale of the project in the event Al. Neyer claims it is unable to purchase Madison's interest in the Company. Madison argues that §13.3 cannot be read to limit its rights pursuant to, or excuse Al. Neyer from performing its obligation under, § 13.1. Madison contends that Al. Neyer's reading of the contract as doing so conflicts with both the language of the Agreement and Ohio law. Madison argues that under Ohio law, a remedy set out in a contract is not considered an exclusive remedy unless the contract clearly and expressly specifies exclusivity. In support of its position, Madison cites one Sixth Circuit case applying Ohio law, ***Micrel, Inc. v. TRW, Inc.***, 486 F.3d 866, 878-79 (6th Cir. 2007) (agreement did not provide for an exclusive remedy) and two Ohio appellate cases, ***M.G.A., Inc. v. Amelia Station, Ltd.,*** 2002 WL 31127518, *4 (Ohio Ct. App. Sept. 27, 2002) (unpublished decision) ("limitations-of-remedies clauses are not favored and the parties' intent to make the specified remedy exclusive must be

5

clear from all the facts and circumstances of the case") and *David Moore Builders, Inc. v. Hudson Vill. Joint Venture,* 2004 WL 2244471, \*\*4-5 (Ohio Ct. App. Sept. 22, 2004) (unpublished decision) (finding no clear indication that the parties intended that the remedy stated was to be the exclusive remedy in the event of a default.)

Al. Neyer challenges the applicability of the authorities Madison cites to this case on the ground that they concern whether an agreement provided for an exclusive remedy after a breach of the agreement had been established, whereas there allegedly has been no breach of the Agreement here. Al. Neyer contends that if Madison decides to mandate a sale, it is exercising a contractual option under the Agreement and is not pursuing a legal remedy for breach of contract. Moreover, Al. Neyer contends that the authorities Madison cites do not support its position because they involved different types of transactions which are governed by specific provisions of the Ohio Revised Code that are inapplicable to the transaction at issue here. Finally, Al. Neyer claims that *M.G.A.* strongly demonstrates that this case is not ripe for summary judgment because the record is not developed and the intent of the parties is disputed. Al. Neyer notes that the court in *M.G.A.* stated that whether a contract provides for an exclusive remedy depends not only upon the language and literal meaning of the words in the clause (which may be subject to more than one interpretation), but upon the intent of the parties as revealed by the document as a whole, the background of the document when executed, the parties' conduct, and the nature of the subject matter involved. 2002 WL 31127518 at \*4. Al. Neyer contends that this Court is lacking information as to the background of the contract when executed and as to the conduct of the parties, so as to preclude a ruling on summary judgment. In any event, Al. Neyer contends that the only proper reading of the Agreement is that it does not

provide for an exclusive remedy but at worst, the language of the Agreement is ambiguous. Al. Neyer argues that because, at a minimum, there is a dispute as to the proper interpretation of the Agreement, summary judgment is not appropriate.

## IV.  Undisputed Facts

The following facts as gleaned from the parties' filings are undisputed: By virtue of the Purchase Agreement with REET I, Madison acquired REET I's ownership interest in the Company in February 2005, as well as all of REET I's rights and obligations under the Agreement dated July 26, 2000. Section 13.1 of the Agreement grants Madison, as successor to REET I, the right to demand that Al. Neyer purchase its interest in the Units that are the subject of the Agreement, a right commonly referred to as a put option. By letter dated November 22, 2006, Madison gave Al. Neyer timely written notice exercising its put option right under § 13.1 of the Agreement. Pursuant to the Agreement, Al. Neyer had 12 months from the exercise of the put option to purchase Madison's interest. Al. Neyer and Madison entered into a written agreement, Amendment No. 2 to the Agreement, on August 31, 2007, to extend the 12-month deadline for Al. Neyer to purchase Madison's interest to May 31, 2008 (doc. 23-2, exh. 1). To date, Al. Neyer has neither purchased Madison's interest in the Company nor tendered the Purchase Price for Madison's interest. As a result, Madison filed its complaint with this Court seeking an order requiring Al. Neyer to purchase Madison's interest.

## V.  Summary Judgment Standard

Fed. R. Civ. P. 56 allows summary judgment to secure a just and efficient determination of an action. This Court may only grant summary judgment as a matter of law when the moving party has identified, as its basis for the motion, an absence of any genuine issue of material fact.

7

*Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

The party opposing a properly supported motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986) (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253 (1968)). The evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor. *Anderson*, 477 U.S. at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158 (1970)). However, a district court need not view the facts in the light most favorable to the nonmoving party if that party's version of events is "blatantly contradicted by the record, so that no reasonable jury could believe it." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

The court is not to weigh the evidence and determine the truth of the matter but is to decide whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. There is no genuine issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. *Id.* at 249 (citing *Cities Serv.*, 391 U.S. at 288-289). If the evidence is merely colorable, *Dombrowski v. Eastland,* 387 U.S. 82, 84 (1967), or is not significantly probative, *Cities Serv.*, 391 U.S. at 290, judgment may be granted. *Anderson*, 477 U.S. at 249.

### VI. Breach of Contract

The parties cite Ohio law in support of their respective positions, and the Agreement, § 15.9, provides that it "shall be governed by and construed in accordance with the internal laws of the State of Ohio . . ." The Court will therefore apply Ohio law to plaintiff's breach of contract claim. To prove a breach of contract under Ohio law, a plaintiff must establish the existence of a

8

contract, performance by the plaintiff, breach by the defendant, and damage to the plaintiff. *Doner v. Snapp,* 98 Ohio App.3d 597, 600, 649 N.E.2d 42, 44 (1994).

The primary role of the court in examining a written instrument is to ascertain and give effect to the intentions of the parties. *Foster Wheeler Enviresponse, Inc. v. Franklin County Convention Facilities Authority,* 78 Ohio St.3d 353, 361, 678 N.E.2d 519, 526 (1997). "The intent of the parties to a contract is presumed to reside in the language they chose to employ in the agreement." *Id.* (quoting *Kelly v. Med. Life Ins. Co.,* 31 Ohio St.3d 130, 509 N.E.2d 411, syll. ¶ 1 (1987)). The court must give plain language its ordinary meaning unless "manifest absurdity" results or unless some other meaning is clearly evident from the face of the overall contents of the contract. *Id.* A writing or writings which are executed as part of the same transaction will be read as a whole, and the parties' intentions as to each part will be gathered from consideration of the whole. *Id*.

If the contract language is clear and unambiguous, there are no issues of fact to be determined. *Lincoln Electric Company v. St. Paul Fire and Marine Insurance Company,* 210 F.3d 672, 684 (6th Cir. 2000) (citing *Inland Refuse Transfer Co. v. Browning-Ferris Indus. of Ohio,* 15 Ohio St.3d 321, 474 N.E.2d 271, 272-73 (1984)). The language will be enforced as written. *See Ledyard v. Auto-Owners Mut. Ins. Co.,* 137 Ohio App.3d 501, 505, 739 N.E.2d 1, 3-4 (2000) (citations omitted). The question of whether the language of an agreement is ambiguous is a question of law for the court to decide. *U.S. v. Donovan,* 348 F.3d 509, 512 (6th Cir. 2003).

The issue of whether a contract provides for an exclusive remedy should be determined like any other issue in a contract case, which is by ascertaining the parties' intent. *M.G.A.*, 2002

9

WL 31127518, *4. The court in *M.G.A.* determined that there was a fact issue as to the parties' intent in that case because the language of the contract in issue was ambiguous. *Id*.

## VII. Resolution

The terms of the Agreement, as amended, clearly and unambiguously provide that if Madison gives written notice to Al. Neyer that it will require Al. Neyer to purchase the units that are the subject of the Agreement for the Purchase Price, Al. Neyer is obligated to comply with the purchase demand by May 31, 2008. It is undisputed that Madison gave written notice, thereby invoking Al. Neyer's obligation to purchase the units at the contractual price by the agreed upon date. The Court finds as a matter of law that there is nothing in § 13.3 of the Agreement that relieves Al. Neyer of its obligation to purchase the units for the Purchase Price by the May 31, 2008 deadline or that mandates a sale of the Project in the event Al. Neyer is unable to fulfill its obligation. To the contrary, § 13.3, which is couched in permissive language, clearly and unambiguously grants Madison the *option* to mandate that the Company sell the Project in the event Al. Neyer is unable to purchase the units. Section 13.3 provides that Madison, as REET I's successor, "*shall have the right* to mandate that the Company sell the Project . . ." (emphasis added). The provision does not require that the Company sell the Project under such circumstances. Had that been the parties' intent, they could have easily omitted the language vesting Madison with the right to mandate the sale and instead provided that Madison "shall mandate that the Company sell the Project . . ." To interpret the contract to deprive Madison of the option to mandate the sale if it so chooses would render the language "shall have the right" meaningless and contravene the Ohio rules of contract interpretation, which require the Court to give the plain language of the contract its ordinary meaning.

In sum, there is no issue of fact as to the meaning of the pertinent provisions of the Agreement. By failing to purchase Madison's units for the Purchase Price by May 31, 2008, Al. Neyer breached the terms of the Agreement. Madison is entitled to summary judgment on the issue of liability.

## VIII. Conclusion

Plaintiff's Motion for Partial Summary Judgment on the issue of liability (doc. 19) is **GRANTED**. This case will proceed to trial on the issue of the appropriate remedy for the breach.

**IT IS SO ORDERED.**

    S/ Herman J. Weber
    HERMAN J. WEBER, SENIOR JUDGE
    UNITED STATES DISTRICT COURT